JOSÉ REGUERO GONZÁLEZ, Plaintiff and Appellee, *v.* MANUEL JIMÉNEZ, Defendant and Appellant.

No. 5929. Argued March 7, 1933.—Decided March 21, 1933.

*González Fagundo & González, Jr.,* for appellant. *F. Cervoni Gely* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

This is an action to recover compensation for professional services, wherein it is alleged that about the month of July, 1928, the plaintiff, Dr. José Reguero González, was requested by the defendant, Manuel J. Jiménez, to attend his wife, Carmen Díaz, who was about to have a child and was suffering from the pangs of labor; that plaintiff, acceding to the defendant's request, went to the home of Jiménez in the ward of Tomás de Castro, of Caguas, where he began to render his services to Mrs. Díaz, whose condition became more serious by reason of the fact that she was bearing her first child and it was a case of a dystocial childbirth taking place in the country, he having been compelled to personally blow with his own mouth air into the lungs of the infant in order to stimulate the pulmonary function of the child and to avoid a sure death by asphyxia, thus saving the life of both the mother and the infant; that subsequent to the services rendered to Mrs. Díaz on the night of labor, it was necessary for the plaintiff to continue assisting her for two months or so, visiting her in the country at least once a day and calling on her two and three times a day when circumstances so required, sometimes at night, for which reason he had to neglect his clientele, limiting himself almost exclusively to said lady, and after she recovered from childbirth he was called again several times to render medical services to said lady and her child; which services are reasonably worth $5,000.

The defendant in his answer denied that the condition of his wife was serious, that the plaintiff blew air into the lungs of the infant to avoid death by asphyxia, and that the plaintiff rendered services to the patient during two months, or

that he came to see her once a day and called on her two or three times a day when the circumstances so required. The defendant also denied that the services rendered by the plaintiff were reasonably worth $5,000, and on the contrary he alleged that those services are not worth more than $150; that the plaintiff, being his cousin, did not demand any amount after attending his wife, and that the defendant had delivered to the plaintiff certain chattels that are worth over $500.

The district court rendered judgment directing that the plaintiff recover from Jiménez the sum of $800 as compensation, together with the costs of the suit. The defendant and appellant urges in the first place that the lower court erred in permitting counsel for the plaintiff to ask the following question: ''How many rooms for patients did that clinic have?'' This question was asked after Dr. Reguero had testified that he had a clinic in Caguas. The defendant objected to the question as being immaterial. We are of that opinion also. And inasmuch as the evidence was immaterial, causing no prejudice to the defendant, its admission cannot constitute a reversible error.

It is also urged that the judgment is contrary to the evidence introduced, and that the evidence was erroneously weighed by the district court.

The lower court made a complete summary of the testimony of Dr. Reguero, which we will transcribe, as follows: The plaintiff testified that ''in the month of July, 1928, between 7 and 8 o'clock at night, he was requested by the defendant to render urgent services to his wife, who was seriously ill; that the plaintiff immediately went to the house of the defendant, located outside of the city, and found that defendant's wife was in labor, with all the difficulties presented by this situation in a woman who is bearing her first child; that he made efforts to obtain the corresponding dilation unsuccessfully and this made difficult the application of forceps, and that he was finally able to extract the fetus early the next morning; that the child did not breathe, it being necessary

for the plaintiff to apply his own mouth to the nose and mouth of the child in order to blow some air into the lungs of the latter, which operation involved a serious risk for the health of the plaintiff; that he succeeded in establishing the respiration of the child and that he ordered later that the child should by no means be allowed to sleep; and that he supplied oxygen by artificial means to its lungs; that during the whole night and up to the birth of the child the plaintiff rendered continuous services to the wife of the defendant, whose house he left at about 10 o'clock in the morning; that while he was in his own home taking a bath, he was summoned by the defendant because his wife was seriously ill, and when the plaintiff arrived at the house of the defendant, he found that the wife of the latter presented a subinvolution of the womb, had suffered a severe hemorrhage, and had approximately from 150 to 160 pulsations per minute, thus showing that her heart was working irregularly and that he was dealing with a serious case, for which reason he stayed until the afternoon in defendant's house, which he left in order to return to his own home and come back to continue treating defendant's wife; that the situation was the same the following day, the wife of the defendant presenting on the third day fetid lochia which, when examined, made the plaintiff suspect the possibility of the existence of puerperal fever; that the plaintiff then gave defendant's wife the treatment required in such cases, and applied intrauterine douches for several weeks until the fever disappeared; that defendant's wife suffered moreover from inappetence and from frequent fainting spells; that she was attended by the plaintiff for some time, when she also suffered from an attack of malaria during 6 or 8 days; that at the same time the plaintiff rendered medical assistance to the infant, as it was suffering from a streptococcic conjunctivitis which lasted 5 or 6 days and from an infection of a slight wound which it received in the head by reason of the application of the forceps, and from other ailments common to newborn children; that taking into consideration

the abnormal character of the labor and the serious condition of the defendant's wife during the time that followed the childbirth, the plaintiff had to neglect his clientele while her serious condition lasted; and that when going to the defendant's house in order to render said services the plaintiff invariably used his own automobile."

The defendant testified that on reaching his house Dr. Reguero wrote a prescription, injected the patient once, and that then the defendant and the physician sat down in the porch awaiting the effects of the drug; that shortly thereafter the doctor injected her again and that one hour later, when the child was about to be born, the doctor sat on the border of the bed, and that when childbirth took place he cut the umbilical cord and injected his wife again; that the doctor did not have to apply forceps and that his wife did not have any hemorrhage; that the child suffered no wound; that it was not afflicted with conjunctivitis and that the doctor remained in defendant's house until about 11 P. M. The defendant adds that his wife did not have any puerperal infection; that subsequently the physician kept on coming to his house, but not for the purpose of treating his wife because she was well; that the doctor said he would not charge anything for his services; that the defendant kept in his farm a cow belonging to the physician for about 8 months and that he used to send to the doctor five quarts of milk in spite of the fact that the cow only produced one quart; that he presented the doctor with a thoroughbred Holstein bull worth about $500 and a black crossbreed heifer; that after the child was born the relations between the doctor and the defendant became very close and that the former frequently visited the defendant's house accompanied by his own wife.

Dolores Pérez de Matos, a witness for the plaintiff, testified that she had assisted Mrs. Carmen Díaz as a nurse; that Dr. Reguero had the patient all night under observation, administering her drugs and doing the necessary work; that forceps were applied several times; that the child was born in

the morning, although she does not remember the exact hour; that the child was suffering from asphyxia and the doctor gave it artificial breathing with his own mouth; that she assisted defendant's wife for 14 or 15 days and that during all that time she noticed that the doctor came to the house sometimes twice a day; that the witness has specialized in obstetric cases; that the physician came to the house one Saturday night and the child was born on Sunday morning; that she does not remember that the woman suffered from puerperal fever; that she applied vaginal douches and bathed the patient externally every day; that she thinks she knows what puerperal fever is and that it is her opinion that there was none in this case; that the witness cannot tell what the woman had, this being a matter for the physician; that she does not remember that the child was suffering from ophthalmy or conjunctivitis; that it had a slight ecchymosis on the forehead, but that she does not remember that the child had any severe wounds, and that really she does not believe that the patient had any puerperal infection.

The testimony of the nurse corroborates what Dr. Reguero said with reference to the services rendered to the woman during the night of labor.

Regarding the services subsequently rendered, the nurse stated that Dr. Reguero visited the house, sometimes twice a day. It seems natural that Dr. Reguero should visit the woman and render to her the proper assistance and care customarily given during the first few days following labor. This was explained by the witness when she said that "all physicians do that when they have a case." The testimony of this witness may be commended for its spirit of impartiality. It sets forth the facts in a frank and open manner, both when they favor and when they prejudice the plaintiff. The court held that the facts relative to the childbirth were established as stated by Dr. Reguero. We add that these facts were also shown in the manner expressed by the nurse Dolores Pérez Matos. The testimony of the latter and that

of the plaintiff agree as to the facts that occurred on the night of the childbirth. As regards the services rendered after that night, Dolores Pérez does not corroborate all the statements of the plaintiff, but she testified that the plaintiff visited the woman, sometimes twice a day. However, we think that the amount awarded to the plaintiff by the judgment appealed from is excessive. The lower court estimates that the services rendered during the night of the childbirth are worth $500 and those rendered later, $300. We think that the value of all the medical services rendered by Dr. Reguero to the wife of the defendant, taking into consideration Dr. Reguero's own testimony and that of the nurse Dolores Pérez, as well as the whole evidence introduced, may be reasonably fixed at $400.

The defendant alleges that he delivered certain chattels to the plaintiff but he does not say on what account, and from the evidence it does not appear that this property was delivered, if at all, with the object of paying for the professional services rendered by Dr. Reguero. On this point the lower court says that, as the existence of any contract with regard to said property was not shown, it feels bound to disregard this evidence, and that it should not be understood that the court thereby prejudges any relationship that might exist between the plaintiff and the defendant by reason of the delivery of said property, and that its statements should not be construed to mean that such delivery had been proved.

With regard to the pronouncement of costs, the plaintiff testified that he sent a bill to the defendant fixing his fees in the sum of $5,000. The defendant alleged in his answer that the services rendered were not worth more than $150, and, further, that he delivered to the plaintiff property worth more than $500. The sum claimed by Dr. Reguero is by all means excessive. If the plaintiff had demanded from the beginning the payment of a reasonable amount, the refusal of

the defendant to pay such amount would have had no justification or excuse. It cannot be said that Mr. Jiménez incurred in obstinacy when he refused to pay an amount exceeding the ordinary limits.

In our opinion the judgment appealed from should be modified so as to adjudge the defendant to pay $400 to the plaintiff, without special imposition of costs.